## MURRAY *vs.* ELSTON.

Motion to dissolve injunction not granted, though the equities of the bill were denied by the answer, the circumstances of the case being such as to withdraw it from the operation of the general rule. Injunction continued upon terms.

The argument was before the Vice-Chancellor, on motion to dissolve injunction upon answer filed.

*Mr. Dixon,* for motion.

*Mr. A. Zabriskie,* contra.

THE VICE-CHANCELLOR.

Murray and Elston, for several years partners in business, dissolved their connection in January, 1868, and were soon after involved in disputes and litigation respecting the partnership property and accounts. On the 17th of March, 1870, they made an amicable settlement, and embodied its terms in a writing of that date.

Before the dissolution a foreclosure decree on two mortgages had been obtained against Murray, and his mortgaged premises were about to be sold. To prevent the sale the mortgages and decree were, at Murray's request, assigned by their holder to Elston for the sum of $2940.09, which amount was paid by the check of the firm. In the agreement of March 17th, Murray recognized the decree and mortgages so assigned to Elston, as his separate individual property, and his title to them as free from all question. An alias execution on the decree was afterwards issued to the sheriff of Hudson, and the property duly advertised, when the complainant filed his bill, and an injunction was allowed restraining the sale.

The bill alleges that the agreement of the 17th of March was procured by Elston through fraudulent representations; that while the partnership existed he had charge of the books and accounts of the firm, and for some of the debts of the firm took securities in his own name, and, among others, took from one Smith, who was indebted to the firm in the sum of $6750, a mortgage for $4000 on real estate in New Jersey, and a conveyance of five lots in Brooklyn for the balance; that the entry by Elston in the books of the firm was to the effect that the amount which he realized from .

the mortgage and lots was only $6750, or the amount of Smith's debt, while he actually realized from the same the sum of $9530; that the March agreement was on the faith of the truth of that entry, and that the complainant had but lately learned it to be false; that being false, the agreement is invalid, and the mortgages and decree are the property of the firm, and not of Elston.

The bill asks that the March agreement be decreed to be void, a receiver appointed, and a new accounting and settlement of the partnership affairs. The answer denies, fully and explicitly, the equities of the bill. Under the general rule in such cases, the injunction should be dissolved. But this rule is subject to exceptions, and does not necessarily prevail where, by continuing the injunction, the ends of justice will be better subserved. The motion to dissolve in such instances has been often denied by this court, in the exercise of its appropriate discretion, having regard to the circumstances of the case, and the effect which a dissolution would have upon the relative situation of the parties in the further prosecution of the suit. *Chetwood* v. *Brittan*, 1 *Green's Ch.* 439; *Fleischman* v. *Young*, 1 *Stockt.* 620; *Stotesbury* v. *Vail*, 2 *Beas.* 390.

In addition to the denials which the answer makes of the material allegations of the bill, as to the mortgage and lots taken from Smith, it was urged upon the argument that the separate and absolute title of Elston to the decree, was shown by the terms of the March agreement to have been good and undisputed before that agreement was made, and that therefore Elston's title to it could not be impaired if the agreement itself should be set aside as fraudulent and void. The terms of the agreement referred to in support of this view are these: "Patrick Murray and David Elston, with a view to a full and final settlement, and *the recognition of existing rights,* mutually covenant and agree to and with each other as follows." Because the title of Elston to the decree is then recognized as valid and unquestionable, it is argued that it had not been previously qualified or questioned. I should

not be willing to rely on such an inference. A contrary deduction seems to me quite as logical and fair. Elston's absolute right to the decree, and his right to the Smith mortgage and lots, so far as the pleadings and affidavits now disclose, appear to be essentially the same.

I have had much doubt as to the propriety of withdrawing this case from the operation of the general rule. The statements and denials of the answer are thorough and direct. The answer seems entitled to as much credit as the bill. But still, upon the whole, my judgment is that the temporary injunction should be further retained. The defendant resides out of the state. There are no other assets of the firm within the jurisdiction of the court. If the sale should go on and the proceeds be paid over, the final decree, if favorable to the complainant, would be a barren success.

The answer was not filed for more than four months after the injunction, and the complainant has put in his replication and is proceeding with his suit. He alleges the premises to be a large security for all that is due, or can become due, on the decree during any probable continuance of the suit, and tenders himself willing to pay the moneys into court, if that should be deemed more secure. The answer suggests doubts as to the sufficiency of the premises to satisfy the execution. Under these circumstances the present application should, I think, be disposed of by directing the complainant (if the defendant shall elect to have the order so made,) to pay the sum due on the execution for the amount of decree, interest, and costs into court within fifteen days, and to bring the cause to final hearing within thirty days from the first day of the term, and in default of so doing, the injunction to be dissolved. The costs of this motion to abide the event of the suit.

Such an order will be advised.